# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

JOHN DOE PH                                      )
                                                 )
      Plaintiff                        )
                                                 )
VS.                                              ) Case No.
                                                 )
AGAPE BAPTIST CHURCH, INC. d/b/a                 )
AGAPE BOARDING SCHOOL                            )
                                                 )
    Serve: Bryan Clemensen                   )
        Registered Agent                )
        12998 E. 1400 Road              )
        Stockton, MO 65785              )
                                                 )
JULIO SANDOVAL individually and in his role      )
As Dean of Students for Agape Boarding School    )
                                                 )
                                                 )
BRENT JACKSON, Individually and in his role      )
As Vocational Director and Staff member for      )
Agape Boarding School                            )
                                                 )
                                                 )
Scott Dumar, individually and in his role as     )
Medical Director, Member of the Board of         )
Directors and Staff member for Agape             )
Boarding School                                  )
                                                 )
                                                 )
Jon Wilke, Individually and in his role as Staff )
Member for Agape Boarding School                 )
                                                 )
                                                 )
ROBERT GRAVES, Individually and in his           )
Role as Staff Member at Agape Boarding School    )
And individually and as Deputy Sheriff           )
for Cedar County, State of Missouri              )
                                                 )
                                                 )
AND                                              )
                                                 )

1

**JAMES "JIMBOB" McCRARY, Sheriff,**      )
**in his Individual**      )
**And Official Capacity**      )
      )
      )
**Defendants**      )

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW PLAINTIFF, John Doe PH, Plaintiff and for his causes of action against Defendants duly alleges as follows:

### Nature of Complaint

1.      Agape Baptist Church, a cover for Agape Boarding School and its officers and directors, ran a "school" akin to a concentration camp or torture colony cloaked in the guise of religion.

2.      The individual Agape defendants –  Sandoval, Jackson, Wilke, Graves  and Dumar – engaged in violence and sexual assault of children at the school and / or aided and abetted that violence against students, including John Doe PH.

3.      Agape Baptist Church ignored the complaints of abuse, refused to report the allegations to the Children's Division, actively concealed from the Children's Division abuses that were occurring, aided and abetted the abuse, negligently hired, trained and supervised its staff members and engaged in other tortious behavior that caused John Doe PH harm.

4.      Agape Baptist Church and the Agape Defendants engaged in a continuing pattern of behavior that defrauded Plaintiff  and his parents and guardians, representing the school as a warm, family style school guaranteeing an accredited Christian-based education.  All of those representations were false and caused John Doe PH severe economic and emotional injury.

2

5. Scott Dumar was the designated medical individual on staff at Agape. Dumar failed or neglected to provide appropriate care and supervision over John Doe PH and ratified the behaviors of the other individual defendants.

6. James "Jimbob" McCrary was in law enforcement at the Cedar County Sheriff's department, the Stockton Police Department and eventually became Chief of Police and Sheriff. McCrary was a close personal friend of James Clemenson, founder of Agape, and spent many hours at the facility. Both in his role as law enforcement and individually, James "JimBob" McCrary received reports of abuse occurring at the facility but refused to take any action.

## JURISDICTION AND VENUE

7. This court has jurisdiction over the causes of action asserted herein and over the parties to this action. Plaintiffs assert claims under Missouri Common law and claims under 18 U.S.C. § 1589, 18 U.S.C. § 1591 and 18 U.S.C. § 1595 and 18 U.S.C. § 2255 as well as 42 U.S.C. § 1983.

8. All of the acts complained of herein occurred within this judicial district, vesting this Court with subject matter jurisdiction.

9. Plaintiff is a resident of the State of California. All defendants are Missouri residents. Complete diversity exists and venue is proper under 28 U.S.C. § 1331.

10. Venue is proper in this judicial district under one or more of the following statutes: 28 U.S.C. § 1331, 1367 and / or § 1391(b)(1).

## PARTIES

11. Plaintiff PH is a resident of the State of California. He was a minor at the time of the abuse and negligence set forth herein.

12.     At all material times, Defendant Agape Baptist Church d/b/a Agape Boarding School [hereafter "Agape"] was a non-profit corporation doing business in Missouri with its principal place of business located at 12998 E. 1400 Road, Stockton, MO 65785-8547.  The School was founded by James Clemenson and his son Bryan Clemenson is now the registered agent for the School.

13.     Defendant JULIO SANDOVAL was a member of the staff; Jackson was the Dean of Students for Agape Boarding School at the relevant times.   Although indicted for a felony in the State of California, Sandoval is currently on the Board of Directors of ABM Ministries d/b/a Lighthouse Christian Ministries, an unlicensed boarding school in Piedmont, Missouri.  Sandoval engaged in physical and sexual abuse of Plaintiff, violated the Wilbeforce Trafficking Act and engaged in negligence in his role as Dean of Students for Agape.  Sandoval also worked part time for the Cedar County Sheriff's department as a corrections officer.

14.     Brent Jackson is a resident of Lamar, Missouri.  At all relevant times Jackson was a staff member and / or vocational director at Agape Boarding School.  Jackson engaged in the physical abuse of Plaintiff, violated the Wilbeforce Trafficking Act and engaged in negligence in his role as staff member and Dean of Students at Agape.

15.     Scott Dumar is a resident of Stockton, Missouri.  At all relevant times, Dumar was the Medical Director and staff member at Agape Boarding School.  Dumar negligently failed to provide medical services to the boy while he was a student at Agape.  Dumar violated the Wilbeforce Trafficking Act and engaged in negligence in his role as staff member and Medical Director at Agape.

16.     Jon Wilke is a resident of the state of Missouri.  At all times, Wilke was the School Supervisor and staff member at Agape Boarding School.  Dumar engaged in the abuse of

4

plaintiff.  Wilke engaged in the physical abuse of Plaintiff, violated the Wilbeforce Trafficking Act and engaged in negligence in his role as staff member and School Supervisor at Agape.

17.     Robert Graves is a resident of Cedar County.  At all times, Graves was a security personnel for Agape Boarding School as well and became a Deputy Sheriff for Cedar County. Graves knew of the physical and sexual abuse of plaintiff as well as others.

18.     Defendant McCrary, knew of multiple reports of sexual and physical abuse at Agape Boarding School and its sister property, Circle of Hope Boarding School.  Despite these reports, children who reported or ran away were routinely returned to the Schools without investigation or reporting to the Children's Division.  Additionally, an inherent conflict of interest existed in that Graves, Sandoval and others worked at both Agape and Cedar County Sheriff's Department.  Despite that fact, some of these same individuals were responsible for the investigation of reports of abuse.  The Cedar County Sheriff's Department and the Police department under James McCrary had an official policy or unofficial practice or lack of training that caused the violation of these children's rights – including Plaintiff.

19.     Sheriff Jimbob McCrary has been the Sheriff of Cedar County since approximately 2017.  Prior to becoming Sheriff, he worked as both Police Chief for Stockton and in law enforcement at the Cedar County Sheriff's office.  During his tenure with the Sheriff's Department, McCrary became aware of and "investigated" reports of abuse at Agape Boarding School.  Sheriff McCrary took no actions regarding the inherent conflict of interest that existed as his employees were some of the same individuals who had reports of abuse made against them.  No effective actions were taken regarding the reports of abuse.  Sheriff McCrary maintained a policy or practice of refusing to investigate and / or report allegations of abuse at

5

Agape, returning children to the school for further abuse. Sheriff McCrary failed to train his officers and deputies causing foreseeable harm to these children.

## BACKGROUND FACTS APPLICABLE TO ALL COUNTS

20. John Doe PH grew up in a dysfunctional household. PH, as a teenager, engaged in minor teenage rebellion behaviors including smoking marijuana. He was sent to live with his aunt and uncle.

21. His aunt and uncle were very religious; his uncle was also physically abusive. They sent him to Agape Boarding school to "straighten him out."

22. Agape advertised their success stories; the fun events they had -- like 4th of July parties and celebrations. Agape represented to the families that the boys had lots of activities including interactions with animals, sports and group activities. Pictures on the Agape website supported these representations.

23. Agape also promised a good education. Those representations were all false.

24. When PH first went to Agape, Brent Jackson was at that time in charge of the students.

25. Upon his arrival at Agape, PH immediately had his head shaved, all of his belongings were confiscated and he was strip searched.

26. Bullying and abuse began immediately. The boarding school had a system in which students worked their way up and it was displayed by the color of shirt they were allowed to wear at the school. Plaintiff was initially an Orange shirt but then given a brown shirt.

27. Brown shirts were the lowest rank at Agape. After being assigned a brown shirt, Julio Sandoval and Brent Jackson started yelling at him and Sandoval spat in his face. Referred to as "Brown town," students that were ranked as Brown Shirts were routinely abused.

6

28.     Plaintiff was assigned a "mentor." "Mentors" were fellow students. They had to stay physically within three feet of their assigned student. They were allowed to mete out punishments including jumping jacks, push ups and physical restraint of their mentee.

29.     On one occasion, PH became upset with his mentor, Ezekiel Swain, and hit him. He was sent to "Brown Town" as discipline.

30.     In Brown Town, the students were not allowed to speak. They were required to stand at a table at mealtimes where they were given only toasted oats and a half cup milk and peanut butter sandwiches.

31.     The students were also required to stand on the wall for long periods – sometimes as long as a month. Standing on the wall required students to stand looking at a wall, sometimes with a Bible balanced on their heads or chests, the entire day. They were allowed to leave the wall only for bathroom breaks with permission and to go to bed or shower. They ate their meals standing at the wall as well. This continued for as long as Agape staff required and could last for a month or longer.

32.     Plaintiff met Julio Sandoval while he was in Brown Town.

33.     Julio Sandoval, the Dean of Students, was brutal to the boys. He would pit the boys against each other and get them to fight. Sandoval would get other students, including PH, to hit and brutalize other students.

34.     On one occasion, the Brown Town boys were given 1000 jumping jacks. One of the smaller boys nicknamed "Swervin Irvin" kept messing up; Sandoval gave the other boys food and had them chew it up and spit it on the small boy who was messing up.

35.     The Brown Town boys were given excessive labor that included moving rocks for days. They had these boys excavating and clearing space for a new building.

7

36.     The Brown Town boys did not receive an education while in Brown Town. They were kept doing physical, manual labor for which they were not paid.

37.     The boys were often refused water when they were doing this physical labor.

38.     The boys were encouraged to be aggressive toward each other.  Sandoval would tell PH to hit other boys, which he  did.

39.     Staff often beat boys up in front of the others so that they would learn not to engage in behavior that would cause them to be punished.

40.     The "behaviors" that could create punishment were constantly changing.  The students, including Plaintiff, did not know what was expected of them.  The rules changed constantly and what a student did the day before without incident could be punished by restraint, being placed on the wall, having food restricted or beaten up by staff or other students at the insistence of staff.

41.     On one occasion, Plaintiff was in church.  Defendants Jackson and Wilke pulled him out of church.  Jackson began screaming at PH.  He was screaming so loudly and with such venom that he was spitting on the boy as he screamed.  Jackson's veins popped out.

42.     Jackson grabbed Plaintiff by the shirt collar and began choking Plaintiff.  Jackson lifted PH off the ground by his shirt collar and neck.  He lifted PH so high that the boy was on the window sill.

43.     After lifting PH to a height higher than a window sill, he slammed Plaintiff to the ground, head first.

44.     Sandoval joined in the beating.  He slammedPH's head onto the tile multiple times while Jackson raced to get another person.

8

45. When that person and Jackson returned, Sandoval was dragging PH along the wall, slamming his head against it. PH began crawling like a soldier crawls on his stomach. PH tried to get to the stairs so he could get air.

46. The men beat PH senseless. He was terrified.

47. Jackson pulled PH down the stairs, ripped his shirt and slammed him onto a wrestling mat. There, the men restrained him and held him down with their elbows pushing into his muscles for approximately an hour, causing him excruciating pain. They called this kind of restraint "extreme pressure" restraint.

48. After that incident, Plaintiff was petrified of Sandoval. He did whatever Sandoval requested, even bullying or beating up other kids.

49. Sandoval related to Plaintiff that he had a fantasy about killing people including students at the school.

50. Sandoval encouraged the boys to beat up those believed to be gay or weak. PH was encouraged to hurt people. When he was a mentor himself, he had free reign to hurt people.

51. After PH left Agape, he felt terrible about the things he had done there and began reaching out to the other students who went through school with him and apologized.

52. Neither Plaintiff's Aunt and Uncle nor parents visited the school. James Clemenson's wife, known as "Ma'am" wrote a blog regarding the school and discouraged home visits or parental visits to the school.

53. Students were given phone privileges but supervised by staff. If a student began giving information about what was occurring, the telephone calls were cut off.

54. Those who ran away were returned to the school without reporting or investigation by the Sheriff's office or the police department.

9

55.     As a result, the students there felt completely rejected and hurt but also had nowhere to turn to report what was occurring.

56.     In order to keep students at the school, staff often wrote kids up for things that were untrue in order to scare parents into keeping them at Agape. The parents and guardians of the children were told things that were untrue exaggerations to prevent them from understanding the true nature of the school and the abuse occurring regularly there.

57.     In the case of Plaintiff, he was given excessive push ups to do -- numbering in the thousands. If any person in the group failed to do the excessive push ups, the entire group was assigned more.

58.     He saw the other boys being required to stand on the wall, forced to excessive exercise, have their food and water restricted, called names, physically abused and punished. He saw students who asked for food have it chewed up in front of them and spat on their faces. After the beating by Sandoval and others, he tried to stay out of trouble and did as he was told even if it meant hurting others.

59.     Agape holds itself out as a Christian school. However, that appellation is merely cover for a criminal enterprise.

60.     Agape and the staff members used their position of power to force silence on the boys under their care.

61.     Agape knew of the abuses being meted out on the children there as they were conducted by managing members of the organization including the Dean of Students, Medical Director, School Supervisor and Security Officer. Further, the restraining of children was taught by the school directors to students and staff so that the children would be placed in severe and excruciating pain during those periods of restraint.

62. Denial of food, water, medical care, extreme exercise, humiliation, denigration, physical assault and sexual assault were all used as means of control over the children who were placed there.

63. As a result of the representations made by Agape and by virtue of the fact that Defendants held themselves out as the counselors and instructors on matters that were moral and ethical as well as the physical restraints placed on the boys, defendants had domination and influence over Plaintiff. In addition, by accepting the care, custody and control of the minor decedent, Defendants stood in an *in loco parentis* relationship with PH.

64. Defendants engaged in active misrepresentation to the parents of the children – who were acting on behalf of the boys – to prevent them from discovering the abuses occurring there and to discourage them from removing their boys from the boarding school for the school's financial gain.

65. Defendants acted with depraved hearts knowing harm was substantially likely to occur, including the damages to Plaintiff described herein and other similarly situated children. Defendants knew or should have known this outrageous behavior would cause emotional distress to the families of the victims, including Plaintiffs.

66. As a direct result of Defendants' wrongful conduct, Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 1: Action under 18 U.S.C. § 1581 *et seq.*
### (Defendants Agape, Sandoval, Jackson, Dumar, Wilke, Wilson and Graves)

67.     Plaintiff incorporates all paragraphs of this Petition heretofore pleaded as if fully set forth herein.

68.     At the time John Doe PH was taken to Agape, he was approximately 16 years of age.

69.     Agape, Sandoval, Jackson, Dumar, Wilke, Wilson, and Graves in activities that affected interstate commerce, including transporting of students across state lines, advertising and/or soliciting students via the internet, conferences, direct advertising, and other means across state lines and otherwise engaging in activities that affect interstate commerce.

70. Defendants placed Plaintiff in a condition of peonage while he resided at Agape.

71.     Plaintiff was held and worked by lawless methods against his will for the purpose of compelling him to discharge real or alleged obligations, creating a condition of peonage under the 13th Amendment to the United States Constitution.

72.     Defendants knowingly obtained the labor or services of Plaintiff by means of force, threats of force, and threats of physical restraint to him and others in violation of 18 U.S.C. § 1589.

73.     Defendants knowingly obtained the labor or services of Plaintiff by means of serious harm or threats of serious harm to her or others in violation of 18 U.S.C. § 1589(a)(2).

74.     Defendants knowingly obtained the labor or services of Plaintiff by means of threatened abuse of law or legal process in violation of 18 U.S.C. § 1589(a)(3).

75.     Defendants knowingly obtained the labor or services of Plaintiff by means of a scheme, plan, and pattern intended to cause Plaintiff to believe that she or another person would suffer serious harm or restraint in violation of 18 U.S.C. § 1589(a)(4).

12

76.     All of the Defendants named in this count acted in reckless disregard of the fact that the venture engaged in the providing of labor through force, physical restraint, threats of physical restraint, serious harm or threats of serious harm to Plaintiff or another, through abuse of law and legal process, and by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that he would suffer serious harm or physical restraint if he failed to provide the labor or services.

77.     Defendants performed abusive acts on him by means of force, threats of force, and/or coercion.

78.     Defendants all received benefits of value from participating in the joint venture in which peonage, slavery, and trafficking in persons occurred. Each Defendant acted knowingly or in reckless disregard of the fact that the venture engaged in these violations.

79.     Defendants knew or should have known that Agape and each individual defendant were engaging in acts in violation of 18 U.S.C. § 1581 *et seq.* as part of their joint venture.

80.     As a direct result of Defendants' wrongful conduct, Plaintiff suffered great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred expenses for medical and psychological treatment, therapy, and counseling.

81.     Defendants actions as heretofore set forth constitute willful, wanton, and/or reckless conduct.  Said willful, wanton and/or reckless conduct constitutes aggravating circumstances justifying punitive damages in this matter.

## COUNT 2:  NEGLIGENCE
**((Defendants McCrary, Sandoval, Jackson, Dumar, Wilke, Wilson and Graves)**

82. Plaintiff incorporates paragraphs 1 – 80 of this Petition as if fully set forth herein.

83. None of the individuals named herein were pastors or clergy to the boys at the facility. Instead, they were lay staff.

84. Each of these Defendants had a duty to protect Plaintiff.

85. This duty arose from:

    a. Defendants' acceptance of custody and supervision of the child.

    b. The Plaintiff's presence on property controlled by the Defendants.

    c. The Defendants' affirmative acts that placed Plaintiff in danger and in the zone of danger.

    d. Agape's employment of the Sandoval, Wilke, Wilson, Dumar, and Graves as their agents.

    e. All Defendants' maintained fiduciary and/or confidential relationships with the Plaintiff and his family. These individuals, who were agents and or servants of Agape, knew or reasonably should have known of their duties and that the breach thereof would cause or was likely to cause plaintiff harm.

86. Despite such knowledge, the Defendants breached their duty to protect Plaintiff when they failed to protect Plaintiff from the abuses, neglect and misfeasance described herein.

87. As a direct result of Defendants' wrongful conduct, Plaintiff suffered great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred expenses for medical and psychological treatment, therapy, and counseling.

14

88.    Defendants actions as heretofore set forth constitute willful, wanton, and/or reckless conduct.  Said willful, wanton and/or reckless conduct constitutes aggravating circumstances justifying punitive damages in this matter.

## COUNT 3
## NEGLIGENT HIRING, SUPERVISION, RETENTION, AND FAILURE TO WARN
### (Defendants McCrary, Sandoval, Jackson, Dumar, Wilke, and Graves)

89.    Plaintiff incorporates paragraphs 1 – 80 of this Petition as if fully set forth herein.

90.    At all times material, Defendant Agape supervised and employed its staff members.

91.    The named staff members – Sandoval, Jackson, Dumar, Wilke, and Graves – were lay staff members, not clergy.

92.    Defendants owed the Plaintiff a heightened standard of care because the Plaintiff was a minor in the custody and control of the Defendants, a status the Defendant invited.

93.    Agape, by and through their agents, servants and employees, knew or reasonably should have known of its employees' and agents' dangerous and exploitative propensities and / or that they were unfit agents, and despite such knowledge, the negligently hired, retained and / or failed to supervise them in the positions of trust and authority as staff members of a boarding school where they were able to commit the wrongful acts against the Plaintiff.

94.    Defendants failed to provide reasonable supervision of staff members, failed to use reasonable care in investigating, hiring and retaining and supervision of its staff members, and failed to provide adequate warning to Plaintiff, and his family, of their dangerous propensities.

95.    Defendant Agape specifically breached their duty of care by failing to remove the abusive staff members, failing to report them, and failing to protect Plaintiff.

15

96.     Defendants disregarded the known risk of sexual abuse.

97.     Defendants' actions caused injury to Plaintiff.

98.     As a direct result of Defendants' wrongful conduct, Plaintiff suffered great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred expenses for medical and psychological treatment, therapy, and counseling.

99.     Defendants actions as heretofore set forth constitute willful, wanton, and/or reckless conduct. Said willful, wanton and/or reckless conduct constitutes aggravating circumstances justifying punitive damages in this matter.

### COUNT 4:
### NEGLIGENT FAILURE TO SUPERVISE CHILDREN
### ALL DEFENDANTS

100.    Plaintiffs incorporate paragraphs 1-80 of this Petition as if fully set forth herein.

101.    Defendants each had a duty to protect children served by their churches.

102.    Upon information and belief, Defendants, by and through their agents, servants and employees, knew or reasonably should have known of the individual defendants dangerous and exploitative propensities and/or that each was an unfit agent, and despite such knowledge, Defendants breached their duty to protect Decedent when they failed to protect PH from the acts described herein.

103.    Agape had the duty to supervise John Doe PH but breached those duties to protect and supervise him by engaging in violence, physical and emotional abuse of the minor as described herein. Sandoval, in particular, engaged in brainwashing of Plaintiff and extreme duress.

16

104. The Staff defendants – Graves, Wilke, Sandoval, Dumar, Jackson -- each had a duty to supervise decedent but breached those duties to protect and supervise decedent by engaging in grooming activities, brainwashing behaviors, boundary violations, physical, emotional and sexual abuse of the minor as described herein.

105. Defendants actions as heretofore set forth constitute willful, wanton, and/or reckless conduct. Said willful, wanton and/or reckless conduct constitutes aggravating circumstances justifying punitive damages in this matter.

106. Decedent suffered great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented from performing his daily activities and obtaining the full enjoyment of life; sustained pecuniary losses that survive his death and for which his personal representatives may recover on his behalf

107. As a direct result of the conduct of Defendants, Plaintiffs lost their son. They have suffered pecuniary losses by reason of his death including but not limited to funeral expenses, and the reasonable value of his services, consortium, companionship, comfort, instruction, guidance, counsel, training and support.

108. As a direct result of the conduct of Defendants, Decedent suffered lost future wages, lost earning capacity, mental anguish, pain of body and mind.

109. As a direct result of Defendants' wrongful conduct, Plaintiff suffered great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 5:  FRAUD AND FRAUDULENT MISREPRESENTATION
### (All Defendants)

110.  Plaintiffs incorporate paragraphs 1-80 of this Petition as if fully set forth herein.

111.  Agape and the individual staff members sued herein engaged in Fraudulent misrepresentation to Plaintiff's Parents and Guardians who made decisions on behalf and in the stead of PH during his minority.

112.  Agape made false material representations to PH through the representations made to his Parents and Guardians including but not limited to the following:

a.     That they operated under the values that Kathleen desired – a safe, kind and Christian environment free from drugs and alcohol.  This representation was false.

b.      That it was a family-oriented school in which they used structure and a disciplined way of life to encourage learning.

c.     That they had women and men in a family setting who would talk to and counsel PH.  This representation was false.

d.     That the boys worked on school every day. This representation was false.

e.      That the school was accredited and would transfer back to his regular high school or be used by the military for entrance.  This representation was false.

f.     Agape told of their success stories; of the fun events they had -- like 4th of July parties and celebrations; that the boys had lots of activities including interactions with animals, sports and group activities.  Pictures on the Agape website supported these representations but they were false.

g.     .  Agape represented that the boys were never left unattended These representations were false.

18

h.    Agape represented that the students would receive appropriate medical treatment. These representations were false.

113.    The Agape Defendants, including the individual staff members sued herein, knew that the representations made about Agape were false or were willfully ignorant of the truth.

114.    These representations were made with the intent that those who had the authority to make decisions on behalf of the minor child would send him to Agape.

115.    The Parents and Guardians making decisions in the Plaintiff's stead did not know that the representations were false when they were given.

116.    The Parents and Guardians relied on those representations, on behalf of PH, in making the choice to send him to Agape.

117.    As a result of these representations, PH  was injured.

118.    The Cedar County Sheriff James McCrary, Robert Graves and others engaged in fraudulent concealment of the abuses occurring at Agape.

119.    Defendants engaged in trickery, deceit and acts of deluding decedent and those who were in a position to act on PH's behalf while a minor.  Defendants engaged in fraudulent concealment in the following particulars:

a.    Defendants Cedar County Sheriff's department, Sheriff James McCrary, Robert Graves and other employees of the Cedar County Sheriff's Department received multiple reports of abuse occurring at both Circle of Hope Boarding School and Agape Boarding School.

b.    The Sheriff Defendants knew at the time of the events in question that Circle of Hope and Agape had a unity of management and worked together in joint adventures as members of the Sheriff's Department worked at both entities.

19

c.  With regard to both Circle of Hope and Agape, the Department engaged in an official policy or unofficial practice in which they returned children who ran away or complained back to the facility.

d.  At the time they returned the children back to the facility or took reports of abuse, the Sheriff Defendants did not make required reports to the Children's Division.

e.  At the time they returned the children back to the facility or took reports of abuse, they Sheriff Defendants allowed individuals who worked at Agape to investigate the claims of abuse.

f. At the time they returned the children back to the facility or took reports of abuse, the Sheriff Defendants failed to investigate the claims of abuse.

g.  At the time they returned the children back to the facility or took reports of abuse, the Sheriff Department maintained those who had been accused of abuse on its payroll including Defendants Sandoval and Graves.

h. In the cases of Graves and Sandoval, they had actual knowledge that each had caused injury to the plaintiff and other children.  Following that actual injury, each made statements designed to conceal the existence of any claim for abuse including threatening the children into silence and telling law enforcement that they knew the child to be a pathological liar or otherwise troubled or mentally ill.

120.  The Agape Defendants including the individual staff members followed a policy that prohibited investigation into allegations of misconduct at Agape.

121. Defendants deliberately failed to report, warn or inform family members or any other individuals or organizations about the abuse of their children at Agape, instead telling them that their children were to blame for their own unhappiness.

122. The Agape Defendants including the individual staff defendants prevented parents from making visits to the facility in order to prevent them from knowing of the abuse of their children.

123. The Agape Defendants including the individual staff defendants prevented the children and parents from having private, unmonitored communications or telephone calls in order to prevent them from knowing of the abuse of their children.

124. The Agape Defendants including the individual staff defendants prevented the children from sending mail that included any negative comments about the school to their parents in order to conceal their abuses.

125. The Agape defendants including the staff defendants prevented the children from receiving letters or care packages sent to them by their parents causing the children to believe they had been abandoned thereby emotionally coercing them into silence in order to conceal their abuses.

126. Defendants knew that they misrepresented, concealed or failed to disclose information relating to misconduct occurring at Agape.

127. Defendant's affirmatively thwarted attempts by the Children's Division / DFS to investigate allegations of abuse at Agape.

128. Defendants actions as heretofore set forth constitute willful, wanton, or reckless conduct. Said willful, wanton and/or reckless conduct constitutes aggravating circumstances justifying punitive damages in this matter.

129.  As a result of the above-described acts, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life;  were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life;  have sustained loss of earnings and earning capacity;  and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(All Defendants)**

130.  Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

131.  Defendants lied to Plaintiff, intentionally inflicted emotional and physical pain upon him in order to force him to join in the discipline and physical abuse of other students, tortured Plaintiff through extreme physical abuse, forced Plaintiff into servitude, refused to protect Plaintiff when he discussed the abuses, and placed Plaintiff in the zone of danger.

132.  Defendants engaged in extreme and outrageous conduct, intended to cause or committed in reckless disregard of the probability of causing emotional distress and harm.

133.  Defendants engaged in unconscionable, outrageous conduct beyond all possible bounds of decency and utterly intolerable in a civilized society.  Defendants' conduct caused Plaintiff severe emotional distress of such a nature that no reasonable person in a civilized society could be expected to endure it.

134.  Plaintiff suffered medically significant and medically diagnosable distress as a result of Defendants' actions as set forth in the Background Facts Applicable to All Counts.

135.  As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

distress that is medically diagnosable and significant, embarrassment, loss of self-esteem, disgrace humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 7: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

136.    Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

137.    Defendants knew or should have known that Plaintiff was being abused at the school, in particular by Graves and Sandoval.

138.    Wilke, Agape and Dumar

139.    Defendants engaged in affirmative acts directed toward Plaintiff that caused him to believe that the abuses were her fault and normal.

140.    Defendants failed to report or warn Plaintiff about the actions of Boyd and Stephanie Householder.

141.    Defendants engaged in actions that alerted the Householders that Plaintiff and/or other students had reached out with questions about the abuses, causing Plaintiff and other students to be further beaten and tortured.

142.    Defendants placed Plaintiff in the zone of danger when others were being tortured and/or abused by the Householders.

143.    The Defendants should have realized that their conduct involved an unreasonable risk of causing Plaintiff emotional distress.

144.    Plaintiff suffered emotional distress or mental injury that is medically diagnosable and medically significant.

145.     As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

146.

## Count 8:  VIOLATION OF 42 U.S.C. 1983
**( James McCrary individually and in his official capacity  at various law enforcement agencies, Robert Graves and Julio Sandoval)**

147.     Plaintiff hereby incorporates Paragraphs 1-65 as if fully set forth herein.

148.  PH was deprived of rights secured by the United States constitution and the laws of the United States.

149.  Those deprivations were committed byJames McClary, Robert Graves, Julio Sandoval and others acting under color of state law.

150.  At all times, the defendants had information and reports from children who were residing at Agape that they had been and / or were being abused by school officials.

151.  With conscious disregard, the defendants ignored those reports, branded the children as liars or other dismissive appellations and returned children to Agape without investigation, reporting or warning to parents or the Children's Division regarding these allegations.

152.   The defendants acted with conscious disregard of the rights of those who resided at Agape.

153. Defendants' actions as heretofore set forth constitute willful, wanton, or reckless conduct. Said willful, wanton and/or reckless conduct constitutes circumstances justifying punitive damages in this matter.

154. As a result of the above-described acts, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 9: INTENTIONAL FAILURE TO SUPERVISE

155. Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

156. At all times material, Defendants Agape was the supervisor and employers of , Sandoval, Jackson, Graves, Dumar and Wilke.

157. Defendants were aware of previous misconduct by the staff of Agape including Sandoval, Jackson, Graves, Dumar and Wilke and knew that future harm was certain or substantially certain to result without proper supervision.

158. Defendants disregarded the known risk of abuse by Sandoval, Jackson, Graves, Dumar and Wilke.

159. Defendants' inaction caused injury to Plaintiff.

160. Plaintiff was abused on the property owned and operated by Defendants and/or was abused on premises that the individual defendants were allowed on solely due to their status.

161. Defendants knew or should have known that sexual misconduct by their employees and/or designated agents would cause or was substantially certain to cause those abused harm.

25

162.    Despite the risk posed by the individual Defendants, Agape continued to place them in positions in which they would have access to and power over those the students.

163.    Despite the risk posed by the Defendants, Agape ratified their actions by approving and paying for travel expenses and other expenses associated with outings with students, encouraging contact with students after knowing of their dangerous proclivities, and allowing the individual defendants to train, mentor, guide, and nurture young students.

164.    By engaging in these actions, Defendants disregarded the risk posed by the individual Defendants.

165.    As a result of Defendants' failures to properly supervise Defendants Sandoval, Jackson, Graves, Wilke and Dumar, Plaintiff was injured and has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress that are medically diagnosable and significant, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues triable in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs asks that this Court award judgment against Defendants as follows:

1. Awarding compensatory, statutory, punitive and treble damages in favor of Plaintiffs against Defendants for damages sustained as a result of the wrongdoings of

Defendants, together with interest thereon;

2.  Awarding Plaintiffs his costs and expenses incurred in this action, including

reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of

Plaintiffs' and counsel's expenses;

3.  Granting such other and further relief as the Court deems appropriate and just.

Respectfully Submitted,

**RANDLES, MATA LLC.**

**_/S/ Rebecca M. Randles_**
Rebecca M. Randles, MO#40149
851 NW 45th Street, Suite 310
Kansas City, MO 64116
(816) 931-9901; (816) 931-0134 (Fax)
rebecca@rmblawyers.com
ATTORNEY FOR PLAINTIFFS

Gerald F. McGonagle, Mo. Bar # 39480
Jarrett Aiken Johnson, Mo. Bar # 42481
McGONAGLE SPENCER JOHNSON LLC
4505 Madison Avenue
Kansas City, Missouri 64111 816-221-2222
jarrett@mcgonaglespencer.com
Rebecca M. Randles, Mo. Bar # 40419
Randles Mata, LLC
851 NW 45th Street–Suite 310
Kansas City, MO 64116 816-931-9901
rebecca@randlesmatalaw.com

ATTORNEYS FOR PLAINTIFF

27